**SELAS OF AMERICA (NEDERLAND)**

**N.V. General Kinetics, B.V.**

**v.**

**SELAS CORPORATION OF AMER-ICA et al.**

**Civ. A. No. 73–1069.**

United States District Court,
E. D. Pennsylvania.

Sept. 27, 1973.

------

Edwin P. Rome, Philadelphia, Pa., for plaintiffs.

David P. Bruton, Philadelphia, Pa, for defendants.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Selas of America (Nederland) N.V. (SAN) was, prior to September 16, 1971, a wholly owned subsidiary of the defendant corporation, Selas Corporation of America (SCA). By a "Memorandum of Understanding" dated September 16, 1971, entered into between SCA and a group of "Key Employees" of SAN, SCA agreed to sell 60% of the SAN shares issued and outstanding to a new Dutch corporation to be organized by the "Key Employees". General Kinetics (GK) was later organized for this purpose. The memorandum also provided that SCA would for a three year period be entitled to nominate three of the five members of SAN's Board of Directors, and thereafter two members; SAN would authorize and issue ten (10) non-callable preferred shares bearing cumulative dividends at the rate of $60,000.00 per share for two years and $40,000.00 per share thereafter; SCA would be entitled to repurchase the SAN shares sold to GK if the $600,000.00 preferred dividend was not paid at the end of each of the first two years; SCA was to receive all of the retained earnings of SAN as of October 1, 1971 "comprising approximately two million dollars (subject to final audit)."

Soon after execution of the Memorandum of Understanding and after transfer of the SAN shares to GK, a dispute arose between the parties concerning the proper amount of SAN's retained earnings as of October 1, 1971. An audit commissioned by SCA placed SAN's retained earnings at $2,280,096.00; an audit commissioned by SAN placed retained earnings at $1,869,363.00. In July of 1972 SCA brought suit in the Netherlands attempting to establish the primacy of the audit it had commissioned which entitled SCA to a greater amount of retained earnings than that reflected in the SAN audit.

In April of 1973 SCA brought a second suit in the Netherlands seeking to reacquire full control of SAN under the provisions of the Memorandum of Understanding whereby SAN was to pay a $600,000.00 preferred dividend to SCA for the period from October 1971 to September 1972. SCA claims that SAN's earnings for the period of October 1971 to September 1972 is sufficient to pay the $600,000.00 dividend owed SCA only because of the under-reporting of retained earnings accomplished by use of the SAN audit for the period prior to October 1, 1971. Of the $700,000.00 of total earnings by SAN for the twelve-month period commencing October 1, 1971, $410,733.00 are a result, SCA contends, of SAN's under-reporting of retained earnings for the period prior to October 1, 1971. Thus, SCA reasons that if the audit it commissioned is found by the Netherlands court to be the correct report, SAN cannot possibly meet its obligations to pay the $600,000.00 dividend for the 1971–1972 period. This result would allow SCA the right to

reacquire SAN pursuant to the Memorandum of Understanding.

Based on this history of prior litigation between SCA, SAN and its various officials, the defendants in the action currently before us have moved to dismiss or stay Counts I through VII and IX of the complaint. Defendants contend that plaintiffs' complaint is in essence a request for declaratory relief which should not be entertained by this court since the issues in the case *sub judice* will be decided by the Netherlands litigation. Count VIII is sought to be dismissed but on the substantive grounds that this court lacks subject matter jurisdiction under the Securities Exchange Act of 1934 (Act) and that Count VIII fails to state a claim upon which relief may be granted under § 10(b) of the Act, 15 U.S.C. § 78j(b)(1970). We will consider the motion to dismiss or stay Counts I through VII and IX separately from our consideration of the motion to dismiss Count VIII.

### *Motion to Dismiss or Stay Counts I through VII and IX*

Counts I through VII and IX of the complaint are premised on diversity of citizenship jurisdiction, 28 U.S.C. § 1332(a)(2) (1970); plaintiffs are citizens of the Netherlands and the defendants are citizens of Pennsylvania. The requisite jurisdictional amount is also alleged.

Count I alleges a breach of fiduciary duty by SCA and the three SCA appointed Board of Directors of SAN. It is alleged that the individual defendants, Siemssen, Seemann, and Claycomb, have used confidential information obtained as a result of their service as SAN Directors for the purpose of attempting to influence SAN's customers to breach, repudiate or cancel existing contracts with SAN. The prayer for relief under Count I is for one million dollars damages, one million dollars exemplary damages, an injunction restraining defendants from interfering with relations between SAN and any of its customers or from making false representations concerning SAN to those customers, removal of the SCA appointed Directors from the SAN Board and an order voiding that paragraph of the Memorandum of Understanding allowing SCA to nominate three (later two) of SAN's Directors.

Count II alleges interference with contractual relationships. The factual allegations underpinning Count II are substantially similar to the allegations in Count I. The prayer for relief under Count II asks for damages and injunctive relief.

Count III alleges trade defamation resulting from false information supplied by SCA to the effect that SAN was technologically incapable of fulfilling its contractual obligations to its customers. In addition, it is alleged that SCA published a false report that SAN was about to become bankrupt and that SAN had not earned the $600,000.00 preferred dividend authorized by SAN's Board of Directors. The prayer for relief requests damages and an order compelling SCA to retract the alleged false statements.

Count IV alleges unfair trade practice and unfair competition. The facts alleged are substantially similar to those alleged in regard to the previous count.

Counts V, VI and VII allege breaches of contract. Count V involves a contract negotiated by SAN and SCA with Linde-McKee for the design and manufacture of a gas-cracking furnace in Argentina (the Bahia-Blanco Project). SAN prepared the process design and was to be reimbursed by SCA. Although a successful bid was submitted by SCA, SAN has not been paid for its contribution to the project. In addition to a prayer for damages, plaintiffs request that paragraph 14 of the Memorandum of Understanding reserving a right of repurchase of SAN by SCA be voided. Count VI alleges breach of the Memorandum of Understanding. SAN claims that SCA refused to provide a "counter-

signature" on a performance guarantee for a contract to design and construct an industrial facility in Leuna, East Germany. It is alleged that SCA was obliged by the Memorandum of Understanding to provide counter-signatures for performance guarantees. Count VII alleges breach of an agreement between SCA and SAN whereby SAN was to be the sub-licensee under a license from Imperial Chemical Industries. The prayer for relief in Count VII asks for damages, an order reducing the preferred dividends payable by SAN to $150,000.00 per year and an order voiding SCA's right under paragraph 14(f) of Memorandum of Understanding to repurchase the 60% interest in SAN.

Count IX alleges a conspiracy by the defendants to ruin and destroy SAN's business and the value of GK's interest in SAN. The prayer for relief under this count seeks an order voiding the provision for payment of preferred dividends, an order voiding the provision for repurchase of the SAN shares held by GK and an order excusing SAN from all obligations to supply SCA with financial, commercial or technical data.

 As noted previously, defendants do not contend that the allegations in plaintiffs' complaint fail to state a cause of action upon which relief may be granted. Rather, defendants argue that the complaint actually seeks declaratory relief which should not be granted when there exists pending litigation which will necessarily resolve the issues raised in the action for declaratory judgment. Public Affairs Associates v. Rickover, 369 U.S. 111, 82 S.Ct. 580, 72 L.Ed.2d 604 (1962); Product Engineering and Manufacturing, Inc. v. Barnes, 424 F.2d 42 (10 Cir. 1970); Miller v. Miller, 423 F.2d 145 (10 Cir. 1970); Yellow Cab Co. v. City of Chicago, 186 F.2d 946 (7 Cir. 1951); Aetna Casualty & Surety Co. v. Quarles, 92 F.2d 321 (4 Cir. 1937) are relied on by the defendants for this court's authority to refuse to exercise jurisdiction in an action for declaratory judgment when there is pending litiga-tion which would necessarily resolve the issues before the court.

Defendants' characterization of the complaint as a request for declaratory relief results from a narrow focusing of attention on those prayers for relief which ask that the court void portions of the Memorandum of Understanding. With this limited reading of plaintiffs' complaint, the defendants then proceed to argue that defendants' success in the Netherlands litigation would establish that SCA has been the constructive owner of SAN because of SAN's failure to pay the preferred dividend by September 30, 1972. SCA's status as constructive owner of SAN would, the argument continues, allow SCA to foreclose any relief SAN seeks against SCA. If, however, SCA fails to establish in the Netherlands litigation the primacy of the audit it had commissioned, and SAN is thus able to fulfill its obligation to pay $600,000.00 preferred dividend, SCA then "may rescind the Agreement [Memorandum of Understanding] on grounds of misrepresentation." No speculation is given to the possible result on the litigation before us flowing from SCA's failure to show misrepresentation.

Defendants' motion to dismiss or stay assumes more, however, than that the complaint seeks declaratory relief and that the Netherlands litigation will establish SCA's right to repurchase SAN. The motion assumes, in addition, that SCA's right to repurchase forecloses any basis for a cause of action by SAN for alleged wrong doing prior to a determination of SCA's right to repurchase. The thrust of defendants' motion is that a corporation which is constructively owned by another corporation cannot maintain an action against the latter corporation without the latter corporation's consent. No authorities, however, are cited by defendants in support of this proposition. While the Netherlands litigation may establish SCA's right to repurchase the shares sold to GK, it will not determine that SAN is thereby foreclosed from asserting claims against SCA

for wrongs which would otherwise be actionable. Since this issue will not be foreclosed by the pending litigation, defendants' motion to dismiss or to stay must be denied.

### Motion to Dismiss Count VIII and Count IX as it Relates to Count VIII

■ Count VIII alleges a violation by defendants of § 10(b) of the Act, 15 U.S.C. § 78(j)(b) and Rule 10(b)(5) of the SEC's rules promulgated thereunder. Plaintiffs allege that the defendants made certain fraudulent statements and misrepresentations in connection with the sale of SAN's outstanding shares of common stock to GK and the sale of ten SAN preferred shares by GK to SCA. Among the alleged misrepresentations made were that SAN was to continue as sublicensee under a license from Imperial Chemical Industries, that SCA would provide counter-signatures for guarantees and that the directors nominated by SCA for SAN's Board of Directors would act in the best interests of SAN.

Defendants contend that this court lacks subject matter jurisdiction over this claim because it involves the transfer of ownership of securities of a foreign corporation (SAN) to a foreign purchaser (GK) with the transfer taking place in the Netherlands.

The applicability of § 10(b) of the Act to stock transactions of foreign corporations has received extended discussion in three cases. Schoenbaum v. Firstbrook, 405 F.2d 200, mod. with respect to liability of one set of defendants, 405 F.2d 215 (2 Cir. 1968), cert. denied, 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969); Leasco Data Processing Equipment Corporation v. Maxwell, 468 F.2d 1326 (2 Cir. 1972); Travis v. Anthes Imperial Limited, 473 F.2d 515 (8 Cir. 1973). Each case held that the Act applied to the transaction involved in that case. Defendants contend that these decisions are limited to transactions which either have a demonstrable effect on American securities markets or involve the protection of an American investor.

We need not determine whether the protection afforded by § 10(b) is limited to an American investor since it is clear that sufficient conduct took place within the U.S. to allow applicability of § 10(b) beyond the U.S. and that the transaction in question has a significant impact on American securities markets. SCA is a publicly owned corporation whose stock is registered on the American Stock Exchange. Furthermore, it is alleged by plaintiffs that at least one of SAN's major shareholders is an American. The case before us is a far cry from the hypothetical situation posed by Judge Friendly in Leasco Data Processing Equipment Corporation v. Maxwell, 468 F.2d *supra* at 1338 in which a "German and a Japanese businessman met in New York for convenience, and the latter fraudulently induced the former to make purchases of Japanese securities on the Tokyo Stock Exchange." The agreement whereby the stocks were transferred in this case was made in the United States between an American Corporation and employees, at least one of whom is alleged to be an American, of a wholly-owned foreign corporation. And the alleged fraudulent acts took place in the United States. The result of SCA's alleged fraud may cause a serious if not a complete loss of a once wholly-owned company and that company's earnings. We cannot say that the impact on the American market is insignificant.

■ Finally, SCA's contention that the alleged misrepresentations cannot be construed as misrepresentations of fact is not properly dealt with on a motion to dismiss. Whether statements were made upon which SAN had no reason to rely because of existing legal relationships established in a license or other written agreement cannot be decided simply on the pleadings. The defendants have submitted no affidavits in support of this contention.

## ORDER

Now, September 27, 1973, it is ordered:

1. Defendants' motion to dismiss or stay Counts I through VII and IX are denied.

2. Defendants' motion to dismiss Count VIII and Count IX insofar as it relates to Count VIII is denied.