Abdallah W. TAMARI, et al., Plaintiffs,

v.

BACHE & CO. (LEBANON)
S.A.L., Defendant.

No. 75 C 4189.

United States District Court,
N. D. Illinois, E. D.

May 25, 1982.

Robert P. Howington, Jr., Howington, Elworth, Osswald & Hough, Chicago, Ill., for plaintiffs.

N.A. Giambalvo, James W. Collins, Lawrence M. Gavin, Boodell, Sears, Sugrue, Giambalvo & Crowley, Chicago, Ill., for defendant.

**MEMORANDUM OPINION AND ORDER**

GETZENDANNER, District Judge.

This matter is before the court on the motion of defendant Bache & Co. (Lebanon) S.A.L. ("Bache Lebanon") for judgment on the pleadings or, in the alternative, for summary judgment. Defendant asserts three grounds for its motion: lack of subject matter jurisdiction; collateral estoppel; and no right of action under the Commodity Exchange Act, 7 U.S.C. §§ 1–24 (the CEA) and associated rules and regulations. For the reasons that follow, the motion is denied, except as to the alleged violations of the exchange rules.

*Subject Matter Jurisdiction*

Plaintiffs Abdallah Tamari, Ludwig Tamari and Farah Tamari (the Tamaris) are Lebanese citizens and residents of that country. Defendant Bache Lebanon is a wholly-owned subsidiary of Bache & Co., Inc., a Delaware corporation ("Bache Delaware")[1], and it is a Lebanese corporation having its sole office in Beirut, Lebanon. The Tamaris allege that Bache Lebanon solicited commodity futures orders (apparently for silver, coffee and pork bellies, among other commodities) from them in Lebanon and then transmitted such orders by wire from its Beirut office to Bache Delaware's Chicago offices for execution on the Chicago Board of Trade (the CBOT) and the Chicago Mercantile Exchange (the CME).[2] They further allege that Bache Lebanon made misrepresentations regarding its expertise, gave false advice on market conditions, mismanaged their accounts, and breached its fiduciary duty. Their complaint has two counts, the first under the CEA, and the second for common-law fraud.

The jurisdictional issue is whether this court has subject matter jurisdiction over a cause of action arising from trading on

---

1. Bache Delaware was formerly a defendant in this litigation, but on May 19, 1976, Judge Grady, to whom this case was previously assigned, dismissed Bache Delaware. The Tamaris then arbitrated their claims against Bache Delaware and Bache Delaware prevailed in the arbitration proceedings.

2. Bache Lebanon is not a member of either exchange and thus could not execute the orders itself.

American commodities exchanges when the parties to the suit are nonresident aliens and the contacts between them occurred outside the United States. The court concludes that it does have jurisdiction of this dispute.

The CEA has been held to have extraterritorial application in some circumstances, *Commodity Futures Trading Commission v. Muller,* 570 F.2d 1296, 1299 (5th Cir. 1978). Both parties, in arguing for and against the applicability of the CEA to the circumstances in this case, have primarily relied on the case law in analogous securities law cases. There is a substantial body of such case law defining the transnational scope of the Securities Act of 1933 and the Securities Exchange Act of 1934. See generally the cases and articles listed in *Continental Grain (Australia) Pty., Ltd. v. Pacific Oilseeds, Inc.,* 592 F.2d 409, 413 (8th Cir. 1979).[3]

In these cases, courts have developed two related doctrines for analyzing transnational problems, the effects test and the conduct test.[4] While some courts have indicated that both tests must be satisfied in order to sustain subject matter jurisdiction, the weight of authority holds that meeting either test establishes jurisdiction. *Continental Grain, supra,* 592 F.2d at 417 (8th Cir. 1979) (jurisdiction may be established by meeting either test); *Straub v. Vaisman & Co.,* 540 F.2d 591, 595 (3d Cir. 1976) (conduct alone sufficient from a jurisdictional standpoint); *Leasco Data Processing Equipment Corp. v. Maxwell,* 468 F.2d 1326, 1334 (2d Cir. 1972) (same). This court need not resolve the issue, however, as under each test jurisdiction exists here.

*The Effects Test*

■ Under the effects test, courts sustain jurisdiction over conduct occurring in foreign countries when that conduct causes foreseeable and substantial harm to interests within the United States, that is, when there is a substantial impact on domestic investors or on the domestic market. The doctrinal basis for this test derives from the Restatement (Second) of Foreign Relations Law of the United States § 18.[5] The first court to formulate and apply the effects test was the Second Circuit in *Schoenbaum v. Firstbrook,* 405 F.2d 200 (2d Cir.), *aff'd as to jurisdiction and rev'd on other grounds,* 405 F.2d 215 (2d Cir. 1968) (en banc), *cert. denied sub nom., Manley v. Schoenbaum,* 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969).

In *Schoenbaum,* an American shareholder in a Canadian corporation brought a derivative suit alleging fraud in violation of the 1934 Securities Exchange Act. The challenged transaction occurred in Canada, but it involved Canadian stock registered on the American Stock Exchange. The court held that the securities laws applied extraterritorially in that case "in order to protect domestic investors who have purchased foreign securities on American exchanges and to protect the domestic securities market

**3.** For additional analyses of the important case law in this area, see *Grunenthal GmbH v. Hotz,* 511 F.Supp. 582, 585–87 (C.D.Cal.1981); and *Recaman v. Barish,* 408 F.Supp. 1189, 1194–1202 (E.D.Pa.1975).

**4.** "Of course, the courts may in reality by [sic] using a much more flexible, and more traditional, approach; that is, the courts may, in each particular fact situation, be balancing the competing interests presented.... *cf.* Comment, *Jurisdiction in Transnational Securities Fraud Cases—SEC v. Kasser, supra,* note 4, 7 Den.J. Int'l L. & Pol'y at 286 n.46 (suggesting "test" is too simplistic a term)." *Continental Grain, supra,* 592 F.2d at 416 n.11.

**5.** § 18. Jurisdiction to Prescribe With Respect to Effect Within Territory.

A state has jurisdiction to prescribe a rule of law attaching legal consequences to conduct that occurs outside its territory and causes an effect within its territory, if either

(a) the conduct and its effect are generally recognized as constituent elements of a crime or tort under the law of states that have reasonably developed legal systems, or

(b)(i) the conduct and its effect are constituent elements of activity to which the rule applies; (ii) the effect within the territory is substantial; (iii) it occurs as a direct and foreseeable result of the conduct outside the territory; and (iv) the rule is not inconsistent with the principles of justice generally recognized by states that have reasonably developed legal systems.

from the effects of improper foreign transactions in American securities." 405 F.2d at 206.

The effects test enunciated in *Schoenbaum* was later limited by two cases from the Second Circuit decided on the same day, *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974 (2d Cir.), *cert. denied sub nom., Bersch v. Arthur Andersen & Co.*, 423 U.S. 1018, 96 S.Ct. 453, 46 L.Ed.2d 389 (1975) and *IIT v. Vencap, Ltd.*, 519 F.2d 1001 (2d Cir. 1975). In *Bersch,* a plaintiff class consisting of thousands of shareholders, most of whom were foreign, had purchased stock in an international corporation organized under the laws of Canada. The named plaintiff, an American, brought an action against various American and foreign underwriters and an American accounting firm. The challenged public offering had been deliberately structured to avoid sales in America, but despite this some sales had been made to Americans, both within the United States and abroad.

One of the grounds for jurisdiction asserted in *Bersch* was the adverse general effect the collapse of the international corporation had on the American stock market, even though its securities were not traded on American exchanges. To support this assertion, plaintiffs submitted an affidavit from an economics professor. The *Bersch* court rejected this argument, stating:

> [W]e do not doubt that the collapse of IOS after the offering had an unfortunate financial effect in the United States. Nevertheless we conclude that the generalized effects described by Professor Mendelson would not be sufficient to confer subject matter jurisdiction over a damage suit by a foreigner under the anti-fraud provisions of the securities laws.

519 F.2d at 988. See also *Recaman v. Barish,* 408 F.Supp. 1189, 1199 n.11 (E.D.Pa. 1975) (study showing general adverse impact on economy in case where securities were not traded on domestic exchanges held to be insufficient under effects test).

In *SEC v. Kasser,* 548 F.2d 109, 113 (3d Cir.) *cert. denied sub nom. Churchill Forest Industries (Manitoba) Ltd. v. SEC,* 431 U.S. 938, 97 S.Ct. 2649, 53 L.Ed.2d 255 (1977), the Third Circuit found the effects test to be inapplicable in a case where the securities involved were not traded on American exchanges. The Court reasoned:

> Frequently, trading on an exchange has helped to undergrid findings of jurisdiction in other transnational cases. Where a stock exchange is involved, courts have found sufficient impact in the United States to sustain jurisdiction.

The Eighth Circuit in *Continental Grain (Australia) Pty., Ltd. v. Pacific Oilseeds, Inc.,* 592 F.2d 409, 417 n.12 (8th Cir. 1979), used a similar rationale to find the effects test unavailing where the plaintiff was a foreign corporation, where the securities involved were those of a foreign corporation and were never registered or listed on American exchanges, and where the alleged harm to the plaintiff's American corporate parent was indirect. In distinction to *Kasser* and *Continental Grain* stands the case of *IIT v. Cornfeld,* 619 F.2d 909, 918 (2d Cir. 1980), in which the court upheld jurisdiction partially on the basis that the challenged transactions involved American securities.

Bache Lebanon argues that the facts in the present case do not satisfy the effects test for jurisdiction. It contends that a "personal dispute between private foreign parties cannot have any impact whatever upon United States investors or upon the United States commodities market." (Def. Memo in Support at 12.) Concededly, both the plaintiffs and the defendant in this case are Lebanese and the allegedly fraudulent representations all occurred in Lebanon. The commodities involved, however, were traded on American exchanges.

Relying on this fact, the Tamaris counter that fraudulent transactions on American commodities exchanges have a detrimental effect on the trading on such exchanges and they have submitted an affidavit by an economics professor to that effect. Bache Lebanon attacks the sufficiency of this affidavit on the grounds discussed in the *Bersch* case, that it only describes a theoretical and generalized harm and that this type

of harm cannot confer subject matter jurisdiction. Bache Lebanon continues: "Moreover, given the limited volume of Tamaris' trades in relation to total volume, it is difficult to perceive how any impact could have been felt." (Def. Reply Memo at 8.)

The flaw in Bache Lebanon's arguments is that the transactions at issue here directly involved domestic futures exchanges. The cases Bache Lebanon cites, in which courts found no jurisdiction, all involved foreign securities that were not traded on American exchanges: *IIT v. Vencap, Ltd.*, 519 F.2d 1001, 1016 (2d Cir. 1975); *Investment Properties International, Ltd. v. IOS, Ltd.*, [1970–71] Fed.Sec.L.Rep. (CCH) ¶ 93,011 at 90,736 (S.D.N.Y.), *aff'd without opinion* (2d Cir. 1971); *Fidenas AG v. Compagnie Internationale Pour L'Informatique CII Honeywell Bull S.A.*, 606 F.2d 5, 7 (2d Cir. 1979); *Finch v. Marathon Securities Corp.*, 316 F.Supp. 1345, 1347 (S.D.N.Y.1970) ("It should be noted that [the securities involved] have never been registered in this country—nor have they ever been listed on any of our national securities exchanges or traded on our over-the-counter market.").[6]

■ Similarly, while Bache Lebanon correctly characterizes the affidavit of the Tamaris' expert as theoretical and generalized, the affidavit was not necessary in the first instance to establish an impact on the American futures market. In *Bersch,* the case where the court found a similar affidavit insufficient to establish jurisdiction, the securities involved in the allegedly fraudulent scheme were not registered on American exchanges and were not intended to be sold within the United States. As the court reads *Bersch* and other similar cases, the need for plaintiffs to demonstrate a particularized harm to domestic interests only arises when domestic investors or exchanges are not directly involved. Conversely, in a case such as this, where the challenged transactions involve trading on domestic exchanges, harm can be presumed, because the fraud alleged implicates the integrity of the American market.

■ The court recognizes that no prior case has had to decide whether to sustain jurisdiction under the effects test solely on the basis that the securities involved were traded on American exchanges. The case law, however, does emphasize that "the absence of certain of the elements which led to finding subject matter jurisdiction in [prior] cases does not necessarily preclude a similar conclusion on the different facts presented here." *Bersch, supra,* 519 F.2d at 986. See also *IIT v. Cornfeld,* 619 F.2d 909, 918 (2d Cir. 1980), "the presence or absence of any single factor which was considered significant in other cases . . . is not necessarily dispositive," quoting *Continental Grain, supra,* 592 F.2d at 414. Applying this case-by-case approach here, the court concludes that it has jurisdiction under the effects test in this dispute involving the allegedly fraudulent solicitation of orders for American commodities.

*The Conduct Test*

■ The conduct test bases jurisdiction on conduct occurring within the United States. The residence or citizenship of the parties and the foreign or domestic nature of the securities involved, while relevant, is not the focus of inquiry; instead the courts concentrate on the relative importance of

---

**6.** The one case cited by Bache Lebanon that involved American securities is *Manus v. The Bank of Bermuda,* [1971–72] Fed.Sec.L.Rep. (CCH) ¶ 93,299 (S.D.N.Y.1971). There Canadian plaintiffs sued a Bermuda defendant for a transaction that occurred in London involving the unregistered stock of a New York corporation. The court stated:

In addition to the foregoing which compels dismissal of this complaint for failure to state a claim upon which relief can be granted, subject matter jurisdiction appears to be lacking. The parties are aliens and the principal transaction of which plaintiffs complain took place in London. The plaintiffs do not claim . . . that the transaction was detrimental to the interests of domestic investors or of the domestic securities market. . . . But the question of jurisdiction need not be reached here.

*Id.* at 91,650. Apart from the factual distinction between the unregistered securities in *Manus* and the commodities traded on national exchanges in this case, the court's view of the present jurisdictional problem is not swayed by the New York court's dictum.

activities within the United States to the success of the alleged scheme to defraud. If such conduct is substantial rather than merely preparatory, incidental or fortuitous, the courts are more likely to find jurisdiction. This test derives from Restatement (Second) of Foreign Relations Law of the United States § 17 [7] and as a policy matter seeks to prevent the United States from being "used as a base for manufacturing fraudulent security devices for export, even when these are peddled only to foreigners." *IIT v. Vencap, Ltd.,* 519 F.2d 1001, 1017 (2d Cir. 1975).

This test was first used in *Leasco Data Processing Equipment Corp. v. Maxwell,* 468 F.2d 1326 (2d Cir. 1972). In *Leasco,* American plaintiffs alleged fraud in the sale of the securities of an English corporation that were not registered or traded on American exchanges and were not sold within the United States. The court upheld jurisdiction because "substantial misrepresentations" were made within this country. 468 F.2d at 1339. Since *Leasco,* courts have focused on defining the limits of the conduct test.

In *Travis v. Anthes Imperial Ltd.,* 473 F.2d 515 (8th Cir. 1973), the facts paralleled those in *Leasco.* American plaintiffs sued Canadian defendants over a tender offer and merger involving Canadian securities that were not registered or traded on American exchanges. The plaintiffs alleged that they were led to believe that if they retained their stock until after a tender offer had been made to Canadian shareholders, a separate tender offer would be made to them and other United States shareholders. The court reasoned that subject matter jurisdiction depended on the existence of "significant conduct with respect to the alleged violations in the United States." 473 F.2d at 524.

In finding such significant conduct, the court noted that the plaintiffs alleged that

the mails and telephones had been used to communicate misrepresentations. The court also considered as "significant contacts" within the United States the closing of the ultimate sale of the plaintiffs' shares (which took place in St. Louis, Missouri) and communications leading thereto "even though they were made at a time when the plaintiffs were aware of the defendants' true intentions and were thus not misleading." 473 F.2d at 527. The court reasoned:

> These contacts were the final stage of the defendants' alelged scheme to defraud the named plaintiffs which began with the limitation of the tender offer to Anthes Canadian shareholders and continued on through the acquisition of plaintiffs' shares by [one of the defendants.] They were essential to the alleged scheme and may not be ignored in determining the propriety of subject matter jurisdiction.

*Id.* Similarly, in *Straub v. Vaisman & Co.,* 540 F.2d 591, 595 (3d Cir. 1976), one of the factors that the court relied upon to establish sufficient conduct within the United States was that the stock involved had been traded on an American over-the-counter exchange.

In *Bersch v. Drexel Fireston, Inc.,* 519 F.2d 974, 987 (2d Cir.), *cert. denied sub nom. Bersch v. Arthur Andersen & Co.,* 423 U.S. 1018, 96 S.Ct. 453, 46 L.Ed.2d 389 (1975), the Second Circuit cut back on the reach of the conduct test, stating:

> [W]e see no reason to extend it to cases where the United States activities are merely preparatory . . . and are relatively small in comparison to those abroad.

See also *Vencap, supra,* 519 F.2d at 1018, where the court indicated:

> [J]urisdiction is limited to the perpetration of fraudulent acts themselves and does not extend to mere preparatory activities or the failure to prevent fraudu-

---

**7.** § 17. Jurisdiction to Prescribe with Respect to Conduct, Thing, Status or Other Interest within Territory.

A state has jurisdiction to prescribe a rule of law

(a) attaching legal consequences to conduct that occurs within its territory, whether or not such consequences are determined by the effects of the conduct outside the territory, and

(b) relating to a thing located, or a status or other interest localized, in its territory.

lent acts where the bulk of the activity was performed in foreign countries ....

Conduct that occurs within the United States by chance or merely for convenience is also insufficient for jurisdictional purposes. *Leasco, supra,* 468 F.2d at 1338 (2d Cir. 1972) (dictum; no jurisdiction when a German and a Japanese meet in New York for convenience and the latter fraudulently induces the former to purchase Japanese securities on the Tokyo Stock Exchange); *Grunenthal GmbH v. Hotz,* 511 F.Supp. 582, 583, 588 (C.D.Cal.1981). In *Grunenthal,* all the parties were foreign nationals or corporations; the securities involved were foreign and not traded on any American exchange; the negotiations involved conduct in four countries, including the United States; and the conduct in each country was of relatively equal importance. The challenged transaction, however, was concluded within the United States because one of the defendants was here on a temporary non-immigrant visa for business. The court concluded that the fact that the transaction was concluded here was insufficient because it found that this was only a matter of convenience.

Bache Lebanon argues that the conduct of Bache Delaware and its agents that occurred within the United States was determined to be lawful in the arbitration proceedings and "it follows that all of the activity, if any, constituting the violations must, of necessity, have occurred outside the United States. We are thus left with a case of an alleged fraud on foreigners by a foreign corporation in a foreign country." (Def. Memo in Support at 14.) The Tamaris argue that Bache Lebanon wired the orders it solicited from them to Bache Delaware in Chicago, Illinois for execution on the Chicago exchanges.[8] They further contend that these transmission constitute conduct within the United States and that such conduct is sufficient to confer jurisdiction.

Several courts have found that making phone calls or sending mail to the United States should be deemed conduct within the United States for jurisdictional purposes in transnational cases. *E.g., Continental Grain, supra,* 592 F.2d at 420 n.18:

> Both the place of sending and the place of receipt constitute locations in which conduct takes place when the mails or instrumentalities of interstate commerce are used to transmit communications;

*Travis, supra,* 473 F.2d at 524 n.16; *Leasco, supra,* 468 F.2d at 1335. Thus, Bache Lebanon's transmission of the Tamaris' orders from Beirut to Chicago constitutes conduct within the United States.

The court determines, moreover, that such conduct is substantial or significant when viewed in relation to its importance to the success of the alleged scheme to defraud. As in *Travis, supra,* 473 F.2d at 527, Bache Lebanon's wiring the Tamaris' orders to Chicago and the execution of those orders on the Chicago exchanges were the final steps in the alleged scheme. And again as in *Travis,* the "lawfulness" of Bache Delaware's execution of the orders, as found by the arbitrators, does not cure any prior fraud in Bache Lebanon's solicitations from the Tamaris, nor does it prevent the execution of the orders from being a necessary and foreseeable step in a scheme to defraud, and thus substantial conduct within the United States. On the basis of

---

8.  In its reply brief, Bache Lebanon asserts that it wired at least some of the Tamaris' orders to London and that the orders were then wired from London to the United States on Bache Delaware's "Hassler System." "In essence," Bache Lebanon argues, "*Bache Delaware* not Bache Lebanon, wired the orders from London to within the United States." (Def. Reply Memo at 5 n.3) (emphasis in original). The Hassler System is a private wire system. Testimony establishes that, with this system, an order is teletyped on the system from a branch in Beirut to a central computer in London, where it is almost simultaneously relayed to the United States by the computer. (Dep. of Mr. Fivian, pp. 12–13.) In light of this testimony, the court assumes for purposes of this motion (without, however, finding such to be a fact on the merits, see *Grunenthal, supra,* 511 F.Supp. at 584 n.2) that Bache Lebanon's use of this system constituted a communication from outside to within the United States. Moreover, there is testimony suggesting that the Hassler System could be bypassed and an order placed directly by phone. (Dep. of Mr. Fivian, p. 14). Whether any of the Tamaris' orders were directly telephoned from Beirut to Chicago is not clear from this record.

these transmissions, therefore, the court finds subject matter jurisdiction under the conduct test.

*Collateral Estoppel*

■ Bache Lebanon argues that the Tamaris, in their complaint, allege the same violations that were the subject of the arbitration proceedings between the Tamaris and Bache Delaware, that "all actions taken by Bache Lebanon in connection with the Tamaris' accounts were taken by Bache Lebanon as agent for Bache Delaware" (Def. Memo in Support at 15–16), and therefore that the arbitral decision in Bache Delaware's favor constitutes an adjudication that Bache Lebanon's actions were proper and lawful. Bache Lebanon was not a party to the arbitration; thus, if it is to rely on the decision there, it must show that it is entitled to do so under principles of collateral estoppel.

Once before in this litigation Bache Lebanon raised this identical argument, that the arbitral decision collaterally estops the Tamaris from proceeding against it. This was the subject of a motion to dismiss, treated as a motion for summary judgment, that Bache Lebanon argued to Judge Grady when this case was assigned to him. In a memorandum opinion dated March 17, 1978, Judge Grady rejected Bache Lebanon's argument and denied its motion.

In his opinion, Judge Grady made three points: he concluded that it was impossible to tell what the arbitration panel had decided regarding Bache Lebanon's conduct due to the absence of any express findings; that at least one issue—that of Bache Lebanon's independent liability—could not be precluded by the decision in any case; and that the totality of the circumstances established that it would be inequitable to apply the doctrine of collateral estoppel in this case. Bache Lebanon has not persuaded this court that Judge Grady's conclusions were incorrect.

*Right of Action*

■ Bache Lebanon's final argument, that there is no implied private right of action under Sections 4b and 4c of the CEA, 7 U.S.C. §§ 6b and 6c, can be quickly answered. Prior to the 1974 amendments to the CEA, federal courts had routinely recognized a private cause of action under the statute, and in the recent case of *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* —— U.S. ——, ——, 102 S.Ct. 1825, 1842, 72 L.Ed.2d 182 (1982), the Supreme Court held that the private cause of action survived the 1974 amendments.

Bache Lebanon also argues that no private right of action exists for violations of the rules of the exchanges involved, but the court need not decide this issue. The Tamaris' complaint alleges violations of CBOT Rules Nos. 210, 1822(8), (12), (14) and (15), 1822–A and 1990, and violations of CME Rules Nos. 928 and 942. All of these rules regulate the conduct of members of the respective exchanges. Bache Lebanon, however, is not a member of either the CBOT or the CME. The Tamaris cannot base a cause of action against Bache Lebanon on any violation of the exchange rules, and to the extent that their complaint is based on such violations, Bache Lebanon's motion is granted.

*Conclusion*

Bache Lebanon's motion for judgment on the pleadings or, in the alternative, for summary judgment is denied, except that it is granted as to all claims based on violations of the commodity exchanges' rules.