Edward CRESSWELL, et al., Plaintiffs,

v.

PRUDENTIAL–BACHE SECURITIES, INC., Defendant.

No. 83 Civ. 2099 (RWS).

United States District Court, S.D. New York.

Feb. 22, 1984.

**56**

Edward J. Swan, New York City, for plaintiffs.

Sullivan & Cromwell, New York City, for defendant; Marvin Schwartz, Howard D. Burnett, John L. Hardiman, New York City, of counsel.

## OPINION

SWEET, District Judge.

Defendant Prudential-Bache Securities, Inc. ("Prudential-Bache") has moved for summary judgment dismissing plaintiffs' claim for fraud under the Commodity Exchange Act ("CEA"), 7 U.S.C. § 6b, for lack of subject matter jurisdiction and the remaining claims under the doctrine of *forum non conveniens*. For the reasons given below, the motions are denied.

Plaintiffs are 11 corporate investors, 10 of which are European corporations, and 74 individual investors of European and American citizenship residing abroad. They seek damages for fraud under the CEA as well as for state law fraud, negligence and breach of warranty. Plaintiffs commenced this action on March 17, 1983. This court's opinion of September 27, 1983 denied Prudential-Bache's motion to dismiss for lack of subject matter jurisdiction with leave to renew it after discovery. Discovery has taken place, although Prudential-Bache has requested time for additional discovery on matters other than the jurisdictional question posed by this motion.

Plaintiffs' claims relate to losses they incurred as a result of their investment in spread positions ("Spreads") between futures contracts in Government National Mortgage Association certificates ("GNMA's") and United States Treasury bonds ("T-Bonds"). Beginning in late 1980, employees in Prudential-Bache's branch offices in London and West Germany recommended the Spreads to customers. In May 1981, an employee of Prudential-Bache's London office drafted a one-page document describing investment in Spreads. The document was sent to Prudential-Bache's New York office for review. George M. Caloger ("Caloger"), a second vice-president in the Prudential-Bache commodities division in New York, has testified by affidavit that he read this document but did not change it or show it to or discuss it with anyone else in the New York office. He stated that he reviewed the document to ensure that it was "generally tasteful, well-written and [made] no guarantees of success," then sent it to the Chicago Mercantile Exchange ("CME"), even though neither futures contracts in GNMA's nor those in T-Bonds are traded on the CME. The CME approved the letter, and Caloger notified the London office of this approval.

In March 1982, another employee in the London office sent Caloger another prospecting letter concerning Spreads. Caloger has stated by affidavit that he reviewed this letter for the same purposes as he had the first letter, then phoned the London employee to tell him that he approved of the letter. Again Caloger did not change the document, show or discuss it with anyone else in the New York office. Finally, in April 1982, Prudential-Bache published a brochure describing the Spreads. The brochure was drafted, revised, printed and distributed only in Europe.

All of the plaintiffs invested in Spreads and are alleged to have eventually lost money. Purchases and sales of the GNMA and T-Bond futures contracts for the accounts of plaintiffs were executed on the Chicago Board of Trade following commu-

nications from Prudential-Bache employees in the European offices to Prudential-Bache employees in New York and at the Chicago Board of Trade. Plaintiffs claim that Prudential-Bache fraudulently induced them to invest in Spreads by means of representations made orally and in the publications described above to the effect that the Spreads were safe, conservative investments, and that Prudential-Bache failed to disclose material facts about the Spreads and failed to supervise its employees who sold the Spreads to plaintiffs.

Since this court's September 27 opinion, the Second Circuit has issued its decision in *Psimenos v. E.F. Hutton & Co., Inc.,* 722 F.2d 1041 (2d Cir.1983). That opinion is crucial to the disposition of the instant motion.

Psimenos was a citizen and resident of Greece who became interested in investing through a commodities trading account with E.F. Hutton & Co., Inc. ("Hutton"). Hutton's Athens agent told Psimenos that his account would be managed in accordance with Hutton's standard procedures, and a Hutton flyer informed Psimenos that Hutton's staff "continually monitors" each Hutton account manager. Relying on these statements, Psimenos opened a discretionary account with Hutton's Athens office. Psimenos directed that his money be spent only on conservative investments, but Hutton's agents used the money for highly speculative transactions, and Psimenos lost money. Dissatisfied, Psimenos talked in Geneva with the Athens agent and another Hutton employee and was induced to switch his account to Hutton's Paris office. Although Psimenos' losses were not recouped, he was later convinced to move his account back to Athens, where he lost still more money.

Psimenos brought suit under the CEA for fraud. The district court dismissed the complaint for lack of subject matter jurisdiction, but the Court of Appeals reversed, holding as follows:

> Although most of the fraudulent misrepresentations alleged in the complaint occurred outside the United States, the trading contracts that consummated the transactions were often executed in New York. The issue on appeal is whether that trading in United States commodities markets is sufficient to confer subject matter jurisdiction on a federal district court to hear a claim for damages brought by an alien under the Commodities Exchange Act.

We find that the district court has jurisdiction to hear Psimenos' claim. The trades Hutton executed on American markets constituted the final act in Hutton's alleged fraud on Psimenos, without which Hutton's employees could not have generated commissions for themselves. *Id.* at 1044. In the final paragraph of the opinion, the Court stated:

> Trading activities on United States commodities markets were significant acts without which Psimenos' losses could not have occurred, and are sufficient to establish jurisdiction.

*Id.* at 363.

According to Prudential-Bache, there are insufficient United States contacts in this case to permit jurisdiction under *Psimenos,* even though the Spreads were traded on American exchanges. According to plaintiffs, subject matter jurisdiction exists here because *Psimenos* permits jurisdiction even where a fraudulent scheme is concocted entirely abroad, so long as the scheme involved trading on American commodities markets. The controversy arises despite the holding quoted above because of the following language in the *Psimenos* opinion with respect to United States contacts other than trading on American exchanges:

> We find that under the conduct test, Hutton's activities in the United States in furtherance of the alleged fraud were substantial enough to establish subject matter jurisdiction. First, Hutton's pamphlet, promising continual supervision of highly qualified managers, emanated from Hutton's New York office. This may be considered substantial if, as Psimenos claims, it induced him to open and maintain an account with Hutton.

*Id.* at 1046. On the basis of this language, Prudential-Bache attempts to distinguish *Psimenos,* contending that the holding in *Psimenos* relied on these additional contacts and that the contacts (other than trading on American exchanges) here are less significant than those in *Psimenos,* and are thus insufficient to establish jurisdiction under *Psimenos.*

However, the *Psimenos* court noted that *IIT v. Cornfeld,* 619 F.2d 909, 918 (2d Cir. 1980), held that the fact that the securities at issue were of American corporations and were traded on American exchanges "point[ed] strongly toward" the existence of jurisdiction. In *Psimenos,* the Court noted that "both of the factors that led us to find jurisdiction in *Cornfeld* are satisfied, and subject matter jurisdiction exists ...." *Psimenos, supra,* 722 F.2d at 1047. Similarly, the *Psimenos* court distinguished *Mormels v. Girofinance, S.A.,* 544 F.Supp. 815, 817 (S.D.N.Y.1982), in which Judge Weinfeld held that jurisdiction did not exist, specifically because of "[t]he fact that [in *Psimenos* ] United States commodities markets were used to consummate the alleged fraud," whereas in *Mormels,* they were not.[1] *Psimenos, supra,* 722 F.2d at 1047. Most importantly, the *Psimenos* court stated that it agreed with the opinion in *Tamari v. Bache & Co., (Lebanon) S.A.L.,* 547 F.Supp. 309 (N.D.Ill.1982). In that case, *all* of the alleged fraudulent representations occurred abroad, but the commodities involved were traded on American exchanges. The court held that the wiring of foreign orders to the United States and the execution of those orders on American exchanges was the final step in the alleged fraudulent scheme, and jurisdiction therefore existed. *Id.* at 313, 315–16.

Here, Prudential-Bache's London and West German offices transmitted plaintiffs' orders to Prudential-Bache employees in the United States. Prudential-Bache then executed those orders on United States exchanges. Those actions were the final steps of the fraudulent scheme plaintiffs allege. For this reason, I conclude that *Psimenos* establishes jurisdiction for the plaintiffs' CEA claim based solely on transactions on an American exchange as the final step in the fraudulent scheme. *See Tamari, supra,* 547 F.Supp. at 313, 315–16. I also conclude that the other United States contacts would not alone be sufficient for jurisdictional purposes.

■ Prudential-Bache has also moved to dismiss plaintiffs' diversity claims under the doctrine of *forum non conveniens.* Under *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947), "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." The "private interest factors"— the location of evidence and witnesses, the availability of process to compel attendance of unwilling witnesses and the cost of obtaining attendance of willing witnesses, as well as other practical concerns that make trial of a case easy, expeditious and inexpensive—and the "public interest factors" —court congestion and the imposition of jury duty on a community which has no relation to the litigation, *see id.* at 508–09, 67 S.Ct. at 843—have been considered.

Several of the defense witnesses—Caloger, for instance—are Prudential-Bache employees in New York. Although the great majority of the facts at issue here concern Prudential-Bache's employees in Europe, Prudential-Bache is a United States corporation headquartered in New York City. *See Schertenleib v. Traum,* 589 F.2d 1156, 1164 (2d Cir.1978). Considering all the factors, the balance in this matter does not tip strongly enough to call for rejection of the plaintiffs' choice of

---

**1.** The *Mormels* plaintiffs did allege that certain transactions had been executed on American exchanges and that the defendants had transmitted telexes from Costa Rica to the United States. But Judge Weinfeld noted that the American transactions did not give rise to any damages to plaintiffs and that the telexes did not relate directly to the alleged fraud scheme. 544 F.Supp. at 818. The *Psimenos* court noted that "every fact necessary to complete the fraud" in *Mormels* occurred outside the United States, and that "no act which directly caused Mormels' loss occurred in the United States ...." *Psimenos, supra,* 722 F.2d at 1047.

forum. *Cf. Fustok v. Banque Populaire Suisse*, 546 F.Supp. 506 (S.D.N.Y.1982) (claim dismissed under doctrine where a foreign plaintiff sued a foreign defendant in New York, the United States witnesses had knowledge of only secondary, undisputed matters and there was an action pending in Switzerland which encompassed the plaintiffs' major claims). For this reason, Prudential-Bache's motion to dismiss on grounds of *forum non conveniens* is denied.

Prudential-Bache's motions are denied. Discovery will be completed by May 16, 1984 and the pretrial order filed May 23, 1984.

IT IS SO ORDERED.