**Michael E. MAK, Plaintiff–Appellant,**

v.

**WOCOM COMMODITIES LIMITED, a Hong Kong corporation, and Wocom Limited, a Hong Kong corporation, Defendants–Appellees.**

No. 96–3179.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 20, 1997.

Decided April 23, 1997.

Rehearing Denied June 17, 1997.

James A. McGurk (argued), Chicago, IL, Santiago A. Durango, Chicago, IL, for Plaintiff-Appellant.

David T. Pritikin, Thomas K. Cauley, Jr. (argued), Sidley & Austin, Chicago, IL, for Defendants-Appellees.

Before BAUER, WOOD, JR., and COFFEY, Circuit Judges.

HARLINGTON WOOD, JR., Circuit Judge.

This innovative case raises a question of jurisdiction over damage claims arising from allegedly fraudulent commodity and currency futures trading which occurred in Hong Kong involving an activity known as "bucketing." Plaintiff–Appellant Mak seeks relief under the Commodity Exchange Act ("CEA"), 7 U.S.C. § 1 *et seq.*, and the common law. After a careful analysis, the district court dismissed all of Mak's federal claims and pendent state claims for lack of subject matter jurisdiction. Although Mak's counsel has argued very persuasively on behalf of jurisdiction, we are not persuaded, and therefore we affirm the district court.

*Factual Background*

Mak, a citizen and resident of Hong Kong, invested heavily in futures and options on futures at the Chicago Mercantile Exchange ("CME") and other United States futures exchanges. He placed his trades with the defendant commodity brokers, both of which are Hong Kong corporations and are referred to collectively as "Wocom." The problem in this case is that Mak's investments in question never left Hong Kong.

Mak alleges that Wocom "bucketed" his orders, all in Hong Kong. As the district court explained:

> "Bucketing" has been defined as a "method of doing business wherein orders of customers for the purchase or sale of commodities for future delivery, instead of being executed by bona fide purchases and sales with other traders, are simply matched and offset in the soliciting firm's own office and the firm itself takes the opposite side of the customers' orders." *Purdy v. Commodity Futures Trading Com'n*, 968 F.2d 510, 520 (5th Cir.1992).

Defendants' bucketing, it is alleged, was accomplished in Wocom's "dealing room," to which Mak was not admitted, instead of in the "trading room" where he could have monitored his desired trades.

That bucketing is contrary to the CEA is not disputed, but it is disputed that Mak can benefit from the CEA by charging that he is the victim of foreign-based bucketing frauds. What Mak complains about under the CEA did not happen in the United States and involves people who were not in the United States. Everything regarding these particular trades happened or did not happen in Hong Kong. None of the parties or their agents have ever been located in the United States.

*Analysis*

The central issue here is whether the district court committed error when it dismissed plaintiff's complaint for lack of subject matter jurisdiction. If the dismissal was not in error plaintiff's other issues become moot.

Both parties at least agree that subject matter jurisdiction over international disputes concerning commodity futures transactions is to be largely evaluated according to the "conduct" and "effects" tests set out in our decision in *Tamari v. Bache & Co. (Leba-*

*non) S.A.L.,* 730 F.2d 1103 (7th Cir.1984).[1] It is necessary therefore to examine *Tamari.*

In *Tamari,* the plaintiffs were citizens of Lebanon who brought suit under the CEA for damages they alleged resulted from fraud and mismanagement of their commodity futures trading account. The defendant, Bache & Co. (Lebanon) S.A.L. ("Bache Lebanon"), was a Lebanese corporation wholly owned by defendant Bache & Co., Inc., a Delaware corporation ("Bache Delaware"). The issue in *Tamari* was whether the CEA gave the district court subject matter jurisdiction over a dispute between nonresident alien traders regarding the trading of commodity futures. The dispute arose from contacts between the parties in Lebanon, although the transactions actually took place on United States exchanges. Relying on a number of prior cases which we need not examine again,[2] *Tamari* analyzed jurisdiction by applying the "conduct" and "effects" tests. The conduct test "focuses on the foreigner's conduct within the United States as it relates to the alleged scheme to defraud." *Tamari,* 730 F.2d at 1108. On the other hand, "[u]nder the effects test courts have looked to whether the conduct occurring in foreign countries has caused foreseeable and substantial harm to interests in the United States." *Id. Tamari* also found the underlying intention of the CEA to be to protect the integrity of domestic markets and domestic investors from the harm of improper foreign transactions. *Id.* After applying both tests, *Tamari* concluded that the district court had subject matter jurisdiction over the dispute.

In applying the conduct and effects tests to Mak's case, therefore, we first note that *Tamari* also explains that the transmission of commodity futures orders to the United States from foreign parties is an essential step in the consummation of any scheme to defraud through futures trading on the United States exchanges. *Id.* The *Tamari* court concluded that when Congress passed the CEA, it intended to proscribe fraudulent commodity future transactions executed on a domestic exchange regardless of the location of the agents that facilitated the trading. *Id.* However, *Tamari* does not venture directly into the situation where the alleged fraud and the parties were all outside the United States and domestic markets were not directly involved. Consequently, it is clear that the conduct test cannot be met in the present case, as no transaction took place on a domestic exchange (in fact, none of the events of this case took place in the United States). We decline to extend *Tamari* to reach such situations.

Nevertheless, using the effects test, Mak sees some hope of relief under *Tamari* and the CEA in the factual circumstances of his case. Mak argues that foreign bucketing can directly affect United States interests the same as can improper trades actually executed on American exchanges by foreign agents, which occurred in *Tamari.* Mak argues that the CEA's express prohibition of bucketing as harmful requires relief in this case, even though no trades were actually placed on a domestic exchange. Bucketing, he asserts, is considered harmful because of the nature of the fraud, not because of where it occurs. Mak claims that bucketing distorts the discovery mechanism of our domestic exchanges, deprives various parties of profit, commissions and fees, reduces market liquidity and diminishes the hedging function of the exchanges. Domestic bucketing does not involve placing trades on domestic exchanges either, but it nevertheless has harmful effects. Mak argues that the same reasoning should apply to purely foreign bucketing by foreign parties without the placing of any trades on our domestic exchanges. In *Smith v. Groover,* 468 F.Supp. 105, 121 (N.D.Ill. 1979), bucketing is seen as manipulation of the market, the same as other types of fraud actually occurring on domestic exchanges. That same harm is done to domestic exchanges, Mak claims, anytime bucketing occurs, no matter who does it, where they are or where the bucketing occurs. That reasoning is not without some appeal.

---

1. These tests were adopted from the Restatement (Second) of Foreign Relations Law of the United States.

2. As Mak points out, none of the cited cases dealt with bucketing.

The question we therefore face is whether foreign bucketing by foreign parties of trades intended for but diverted from United States exchanges can be viewed as so directly affecting United States interests that the CEA confers subject matter jurisdiction. We find no helpful precedent directly applying in these factual circumstances. Mak does recognize that in *Tamari* the trades were actually executed on our domestic exchanges whereas in the present case they were not; however, Mak considers that factual difference irrelevant.

In pursuing his theory, Mak presents the affidavits of persons offered as experts, including an executive in the trading business, Kenneth R. Cone, Ph.D, Vice–President of Lexecon, Inc., and James V. Jordan, Associate Professor of Business at George Washington University. Cone concludes that bucketing is a diversion or theft of business from United States exchanges, traders, and brokers which, if left unchecked, would reduce the liquidity and increase transaction costs on United States exchanges. He explains that when foreign bucketing occurs, customer orders are diverted in-house and thereby those who would otherwise have benefited are robbed of their legitimate fees and profits. A bucketing fraud is a fraud on the perpetrator's own customers as well as on the United States exchanges. Cone concludes that the bucketing fraud discourages customer participation and order flow, and impacts adversely on exchange liquidity. Professor Jordan points out that market liquidity is essential to market information aggregation, hedging, effectiveness, and the availability of a competitive market. He opines that bucketing reduces the number of participants in the market and creates greater potential for the exercise of market power and distortion of prices.

However, because the experts offered only the hypothetical effect that a bucketing scheme would be expected to have on the commodities market, and because they did not detail any particular injury to the CME or to United States investors, the district court did not give the opinions of plaintiff's experts controlling weight, citing *Bersch v. Drexel Firestone, Inc.,* 519 F.2d 974, 989

(2nd Cir.1975), and neither will we. *Bersch* held that there can be subject matter jurisdiction over securities-related fraudulent acts committed abroad only when these acts caused injury to persons in which the United States has an interest. That the fraudulent acts "simply have an adverse effect on the American economy or American investors generally" is not considered sufficient for jurisdictional purposes. *Id.*

In addition to presenting the experts' affidavits, Mak cites the opinion of the district court in *Tamari v. Bache & Co. (Lebanon) S.A.L.,* 547 F.Supp. 309, 313 (N.D.Ill.1982) (*Tamari I*). In *Tamari,* this court specifically adopted the *Tamari I* court's application of the conduct and effects test. *Tamari,* 730 F.2d at 1108. The conduct test was found applicable to establish jurisdiction because of the conduct which actually occurred in the United States. *Tamari I,* 547 F.Supp. at 313. As to the effects test, *Tamari I* stated that conduct in foreign countries could sustain jurisdiction when that conduct causes foreseeable and substantial harm to domestic investors or to domestic markets. *Id.* at 311. This appears to support Mak's argument; however, the transactions involved in *Tamari* directly involved domestic future exchanges. In that situation harm could be presumed as the integrity of the American market was directly implicated. If domestic exchanges are not directly involved, the harm alleged, absent domestic investors or exchanges, must be particularized, not merely presumed. *Id.* at 313. The *Tamari I* court found it difficult to perceive how the trades involved there, in relation to total sales, could have had an impact. In this case, Mak claims to be a heavy volume trader, so the impact of bucketing could be great, but we give that fact only limited weight in a totally foreign bucketing situation.

Mak appears to argue either that the general impact on the domestic exchanges as envisioned by his experts meets the particularized harm requirement, or that harm should be presumed for foreign frauds the same as it could be for domestic frauds. No case called to our attention requires the adoption of the presumption of harm in Mak's foreign situation. Nor are we willing

to merely overlook the particularized harm requirement merely because bucketing might be generally harmful.

We do not find Mak's claims of harm to be totally unfounded; however, they come closer in our view to being hypothetical, speculative, and marginal, as Wocom suggests. There may well be some harm to United States markets from a totally foreign bucketing operation, but for jurisdictional purposes we will require greater particularization.

Our courts cannot assume jurisdiction of foreign actors whose foreign, fraudulent activities might only be theorized to have had some vague and immeasurable effect on our markets. Those foreign traders who want the protection afforded by our investment laws must either show contact with American exchanges or show particularized harm to our domestic markets. The harm alleged in the present case would involve our courts in a battle of experts contesting theoretical, hypothetical, and marginal showings of harm difficult, if not impossible, to particularize. If United States jurisdiction cannot be foreseen, the foreign fraud claims can be aired, we assume, in the jurisdictions where the parties did business and where the problems arose. Foreign investors can make that jurisdictional determination before their trouble arises and then do business accordingly. We fail to see how additional discovery in the factual circumstances of this case could have remedied the jurisdictional defect.

Mak has not satisfied the effects test requirements. The threshold for that test must not be so low as to involve our courts in matters totally foreign or largely unrelated to our interests, or at best speculative. If we easily involve our courts without clear justification for accepting jurisdiction, we would be encroaching on the jurisdictions of other sovereignties. Further, Hong Kong would have been a more convenient forum for all parties. Mak relied on Hong Kong jurisdiction in a prior case and could have in this one. We cannot make our judicial system available to those who seek to involve our courts in their foreign problems as they shop here for what they perceive to be a more advantageous forum.

We decline to extend *Tamari* to the distant and uncertain circumstances of this present case. The other issues in the case become moot.

The district court is AFFIRMED.