Richard J. DES BRISAY, derivatively, on behalf of himself and all other former shareholders of Canadian Plywood Corporation Ltd., and C.P.H.C. Holding Co. Ltd., which similarly situated shareholders constitute a class, and Western Pacific Trust Company, Plaintiffs-Appellants,

v.

The GOLDFIELD CORPORATION and Goldfield Lumber Enterprises Limited, Defendants-Appellees.

No. 75-2492.

United States Court of Appeals, Ninth Circuit.

Jan. 24, 1977.

---

**134**

Jennings P. Felix (argued), of Jennings P. Felix & Assoc., Seattle, Wash., for plaintiffs-appellants.

William A. Gould (argued), of Perkins, Coie, Stone, Olsen & Williams, Seattle, Wash., for defendants-appellees.

Before KOELSCH and GOODWIN, Circuit Judges, and JAMESON,* District Judge.

---

* The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

1.  One member of the purported class, Sigvard Dahl, is alleged to be an American citizen;

KOELSCH, Circuit Judge:

This suit is one to secure equitable relief and recover damages based upon an allegedly fraudulent stock transaction between Canadian Plywood Corporation Ltd. (Plywood), a Canadian corporation, and The Goldfield Corporation (Goldfield), an American corporation. Plaintiffs are Richard J. Des Brisay, a Canadian national and former Plywood shareholder, and Western Pacific Trust Company, a Canadian corporation; they seek to represent the class of former shareholders of Plywood.[1]

The matter comes to us on appeal from a ruling of the district court granting defendants' motion for summary judgment on the grounds of lack of subject matter jurisdiction. The precise question is whether the district court erred in concluding that the record failed to show prima facie the presence of jurisdictional facts required for the maintenance of an action under the jurisdictional statutes of the Securities Acts, 15 U.S.C. §§ 77v and 78aa.

Sections 77v and 78aa vest the district courts with jurisdiction not only over claims arising from wholly domestic securities transactions but also from some which are substantially foreign in origin and consummation. Among these are transactions which involve securities registered and listed on a national stock exchange and which result in an adverse impact on domestic securities markets.

We conclude that the facts presently appearing in the pleadings, depositions, etc., and as outlined below, tend to show that this transaction comes within the latter category.

On October 22, 1969, Goldfield, after extensive negotiations with Plywood, entered into a contract to purchase and take over the assets of Plywood, including all its stock.

however, the court did not reach the question whether or not a Rule 23 order should be made.

■ The purchase price was $3,000,000; Goldfield stock was registered and listed on the American Stock Exchange, and the contract provided that this purchase price was to be paid in Goldfield stock, the precise number of shares to be determined by using the average price per share of Goldfield stock traded on the American Stock Exchange during the seven days preceding October 22.[2] To facilitate the transaction, the parties agreed that Plywood would cause to be formed a Canadian corporation, C.P.H.C. Holding Company Ltd. (C.P.H.C.), and that Goldfield would place with it the proper amount of Goldfield stock to make up the purchase price, together with an opinion from Goldfield's New York counsel to the effect that these shares could be validly traded on the Exchange. In turn, Plywood would secure all its own outstanding shares from the shareholders and place them with C.P.H.C., which was to then deliver equivalent C.P.H.C. stock to the erstwhile Plywood shareholders. When this was accomplished, C.P.H.C. was to transfer all Plywood's stock and assets to Goldfield, exchange the Goldfield stock for its own stock and then dissolve. To protect Plywood's former shareholders from any temporary price fluctuation in Goldfield stock following the exchange, Goldfield further agreed to issue additional "make up" Goldfield shares to any who sold the previously received Goldfield shares on the American Stock Exchange for less than this average price.[3]

In enacting the Securities Acts, Congress sought, among other goals, "to insure the maintenance of fair and honest markets" in securities transactions conducted on national exchanges. 15 U.S.C. § 78b. Since that objective would be thwarted by unlawful transactions in securities registered and listed on national exchanges which occur outside the United States, the jurisdictional scope of the Securities Acts has been held to embrace the protection of "domestic securities market from the effects of improper foreign transactions in American securities." *Schoenbaum v. Firstbrook,* 405 F.2d 200, 206 (2d Cir. 1968), *modified in other respects,* 405 F.2d 215 (in banc), *cert. denied,* 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969).

Similarly, substantive relief under the Securities Acts has been granted against improper dealings in American securities by foreign corporations since "the effect of this kind of [improper conduct on the domestic securities market] is quite as great as when the trader is an American." *Roth v. Fund of Funds, Ltd.,* 405 F.2d 421, 422 (2d Cir. 1968), *cert. denied,* 394 U.S. 975, 89 S.Ct. 1469, 22 L.Ed.2d 754 (1969). *See also SEC v. Gulf Intercontinental Finance Corp.,* 223 F.Supp. 987, 995–996 (S.D.Fla.1963).

■ In short, in view of Congress's intention to protect the integrity of domestic securities markets in a particular stock, the fact that an allegedly improper transaction occurred outside the United States or involved parties other than United States citizens has been held not to defeat subject matter jurisdiction where the securities involved in the transaction were registered and listed on a national exchange and the effect of the foreign transaction adversely affected buyers, sellers and holders of those securities. *Schoenbaum v. Firstbrook, supra; Roth v. Fund of Funds, Ltd., supra; Selzer v. Bank of Bermuda, Ltd.,* 385 F.Supp. 415, 418 (S.D.N.Y.1974). *Cf. SEC*

**2.** In their complaint, appellants alleged that upon learning of the transaction, the Securities and Exchange Commission secured a judgment of the United States District Court for the Southern District of New York enjoining Goldfield from making further sales of its securities and that, as a result of the SEC's action, all trading in Goldfield shares on the American Stock Exchange was suspended.

**3.** The defendants filed affidavits and exhibits with the district court showing that this transaction has given rise to considerable litigation in Canadian courts. However, the district court's ruling did not take that fact nor any of those rulings in any of those cases into consideration; as noted, dismissal was rested solely upon lack of subject matter jurisdiction. In reviewing a judgment of dismissal, we are required to take the allegations of appellants as true for purposes of the appeal. *Steele v. Bulova Watch Co.,* 344 U.S. 280, 284, 73 S.Ct. 252, 97 L.Ed. 252 (1952).

*v. United Financial Group, Inc.,* 474 F.2d 354 (9th Cir. 1973); *Selas of America (Nederland) N.V. v. Selas Corp. of America,* 365 F.Supp. 1382 (E.D.Pa.1973). This is such a case.

As noted above, appellants' showing, in substance, is that the defendant Goldfield was an American corporation whose stock was registered and listed on the American Stock Exchange, a national securities market; that the manner in which the takeover transaction was effected violated particular substantive provisions of the Securities Acts and proximately resulted in the collapse of the American market in Goldfield shares; and that as a result, Goldfield's shareholders suffered financial injury.

Thus the transaction in question, so far as this record shows, involved the improper use of securities of an American corporation which were registered and listed on a national exchange and adversely affected not only the plaintiffs but also the American market in that corporation's securities. We thus conclude that the allegations of the complaint are prima facie sufficient to vest the district court with subject matter jurisdiction over the action under the jurisdictional statutes of the Securities Acts.[4]

We emphasize that our conclusion that subject matter jurisdiction exists in this case is provisional and is based on the record now before us. Where the question is one of the extra-territorial application of United States securities laws, "the issue of subject matter jurisdiction persists." *Leasco Data Processing Equipment Corp. v. Maxwell,* 468 F.2d 1326, 1330 (2d Cir. 1972). If in the course of further proceedings below appellants fail to establish the factual basis for subject matter jurisdiction, the district court should dismiss the action.

REVERSED AND REMANDED.

---

4. The facts of this case differ materially from those of *Bersch v. Drexel Firestone, Incorporated,* 519 F.2d 974 (2d Cir. 1975). The securities involved there were those of a foreign corporation, I.O.S. Ltd.; they were not registered and listed on an American securities exchange.

And the only showing of adverse impact from the fraud was upon investors' confidence in the securities market generally, not in direct financial injury to holders of the particular securities. *See* 519 F.2d at 987–989.