GRUNENTHAL GmbH, a corporation of the Federal Republic of Germany, Plaintiff-Appellant,

v.

Paul HOTZ, Bozena Hotz, Balfour Zepler, Joseph Lowe, Richter Corporation, Ltd., a Bahamian corporation, Cadence Corporation, Ltd., a Bahamian corporation, Productos Gedeon Richter (America) S.A., a Mexico corporation, Defendants-Appellees.

Nos. 81–5553, 81–5554.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 4, 1982.

Decided Aug. 4, 1983.

Thomas G. Wood, Robert Lofts, Severson, Werson, Berke & Melchoir, San Francisco, Cal., for plaintiff-appellant.

Robert Mallory, Lawler, Felix & Hall, Gary L. Justice, Rex S. Heinke, Gibson, Dunn & Crutcher, Los Angeles, Cal., for defendants-appellees.

Before FLETCHER, PREGERSON and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

The question presented on this appeal is whether the district court has subject matter jurisdiction under the federal securities

laws over a transaction in foreign securities between foreign corporations and citizens of foreign states where the only connection between the transaction and the United States is that some of the allegedly fraudulent conduct took place here and that instrumentalities of interstate commerce were used to effect the fraud. The district court held that it lacked jurisdiction. In its view, the securities laws do not apply to transactions that have "no effect on any American investors or securities market" and where "the only nexus with the United States is conduct in this country based on convenience and the only local act of fraud alleged is a mere repetition of misrepresentations first spoken abroad." *Grunenthal GmbH v. Hotz*, 511 F.Supp. 582, 588 (C.D. Cal.1981). We disagree with the district court's conclusion and find that the facts of this case are sufficient to establish subject matter jurisdiction.[1]

## I. BACKGROUND

Plaintiff alleges that defendants violated sections 12(2) and 17(a) of the Securities Act of 1933 ("1933 Act"), 15 U.S.C. §§ 77*l* and 77q(a), and section 10(b) of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. § 78j(b), by making certain misrepresentations in connection with an agreement to sell all of the common stock of defendant Productos Gedeon Richter (American) S.A., ("Productos") to plaintiff Grunenthal GmbH ("Grunenthal").

All of the defendants and the plaintiff in this case are either foreign citizens or foreign corporations. Plaintiff Grunenthal is a West German corporation. Defendant Productos is a Mexican corporation controlled through a chain of Bahamian holding companies by a trust based in the Bahamas. The beneficiary of that trust, defendant Paul Hotz, is a citizen of Switzerland and a resident—during at least some of the year[2] —of Italy. Defendant Joseph Lowe, managing director of Productos, is a citizen and resident of Mexico.

For purposes of this appeal, we assume the facts to be as follows:[3]

The Productos transaction was negotiated over the course of four meetings. The first three meetings were held outside the United States and the fourth meeting, at which the agreement was signed, was held in Los Angeles, California.

The first meeting took place in Germany in 1979. Lowe approached representatives of Grunenthal and told them that Hotz controlled Productos and was interested in selling the company. At a second meeting held in the Bahamas in January 1980, Grunenthal's general counsel, Alex F. Bernau, met with representatives of the Bahamian Trust to discuss the mechanics of the proposed transaction. Lowe, Bernau and other

---

1. Because all parties to this case are foreign in citizenship, there is no diversity jurisdiction over the claims of fraud. *See Montalet v. Murray*, 8 U.S. (4 Cranch) 46, 47, 2 L.Ed. 545 (1807); *see also* 28 U.S.C. § 1332(a) (1976).

2. In its opening brief, plaintiff strenuously attacks the district court's characterization of Hotz as a resident of Italy. Plaintiff points to deposition testimony by Hotz which indicates that he has significant contacts with and spends a substantial part of the year in the United States. According to plaintiff, the quality and quantity of Hotz's contacts with the United States have a material bearing on the district court's conclusions that the conduct in this country was based on convenience. As discussed later, we think that the district court's emphasis on the issue of convenience was mistaken; therefore we need not scrutinize the lower court's characterization of Hotz' residence.

3. The district court accepted plaintiff's allegations as true "to the extent not controverted by other evidence." The court was careful to explain that its "recitation" of the "facts" was "not intended as a finding on the merits." 511 F.Supp. at 584 n. 2. Accordingly, we take plaintiff's allegations as true only for purposes of this review. *Des Brisay v. Goldfield Corp.*, 549 F.2d 133, 135 n. 3 (9th Cir.1977). However, "the issue of subject matter jurisdiction persists," *id.* at 136 (quoting *Leasco Data Processing Equipment Corp. v. Maxwell*, 468 F.2d 1326, 1330 (2d Cir.1972)); if the facts upon which jurisdiction rests are to the contrary, the district court should dismiss the cause of action.

The critical point for purposes of this appeal is that while we accept the district court's recitation of the facts, we disagree with the legal conclusions the court drew from that recitation.

representatives of Grunenthal engaged in further negotiations at a third meeting in Mexico.

The fourth and final meeting took place in Los Angeles, California, at the law offices of Grunenthal's American counsel. This meeting was called for the purpose of executing an agreement. All of the principals were present—Lowe, Bernau, other representatives of Grunenthal, and, for the first time, Hotz and Grunenthal's United States counsel. During this meeting Lowe stated that Hotz controlled Productos. Hotz neither qualified nor denied Lowe's statement. At the meeting's conclusion, Hotz and the representatives of Grunenthal signed the agreement.

The closing of the transaction was to take place in the Bahamas. However, the Bahamian trustees refused to approve the sale. Plaintiff then brought this action, asserting two claims for relief. First, plaintiff alleges that Hotz falsely represented that he was the beneficial owner of Productos and that he would cause all of its shares to be transferred to Grunenthal pursuant to the agreement signed in Los Angeles. Second, plaintiff alleges that at the meeting in Los Angeles, Hotz and Lowe falsely represented that they had the present intention to perform the agreement.

Defendants moved to dismiss the complaint for lack of subject matter jurisdiction. The district court noted that there was no controlling precedent in this circuit and reviewed the cases that had arisen in the Second Circuit.[4] *See* 511 F.Supp. at 585–87. The court felt that the Second Circuit's approach to subject matter jurisdiction was "in keeping with expressions of the Ninth Circuit" in closely analogous cases. *Id.* at 588. The court concluded that subject matter jurisdiction did not exist under the Second Circuit's approach. The district court reasoned:

Plaintiff and all defendants are foreign nationals or corporations. The securities which are the subject matter of this transaction are foreign and are privately-held and not traded on any exchange. The course of conduct which culminated in execution of the agreement in Los Angeles involved conduct in three countries, other than the United States, and the importance of the conduct in each of those countries was at least equal to the conduct in this country. The only factual misrepresentation alleged to have been made in the United States was a repetition of representations first made abroad. Thus, it appears that the fact that the transaction was concluded here and, therefore, that the misrepresentation was repeated here, was only for convenience, *i.e.,* that defendant Hotz happened to be here on a temporary visa.

We hold, on these facts, that no subject matter jurisdiction exists; that neither the Securities Act of 1933 nor the Securities Exchange Act of 1934 applies to a transaction in foreign securities between foreign nationals and corporations which has no effect on any American investors or securities market and in which the only nexus with the United States is conduct in this country based on convenience and the only local act of fraud alleged is a mere repetition of misrepresentations first spoken abroad and, thus, not essential to the consummation of the fraud.

*Id.* (footnote omitted).

## II. DISCUSSION

Each of the three federal statutory provisions under which plaintiff has asserted a claim for damages against defendants extends its proscriptions to certain forms of fraudulent activity conducted by the use of "any means or instrumentality of transportation or communication" in commerce be-

4. The court reviewed the Second Circuit's decisions in *Schoenbaum v. Firstbrook*, 405 F.2d 200 (2d Cir.), *rev'd on other grounds*, 405 F.2d 215 (2d Cir.1968) (en banc), *cert. denied*, 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969); *Leasco*, 468 F.2d 1326; *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974 (2d Cir.), *cert. denied*, 423 U.S. 1018, 96 S.Ct. 453, 46 L.Ed.2d 389 (1975); *IIT v. Vencap, Ltd.*, 519 F.2d 1001 (2d Cir.1975); *IIT v. Cornfeld*, 619 F.2d 909 (2d Cir.1980). We find the court's review of these cases sufficiently complete and we need not repeat or summarize it here.

tween the states or between any foreign country and a state.[5] There must also be some degree of connection between the fraud and conduct in, or effects on, the United States. Our circuit has spoken infrequently on the topic of subject matter jurisdiction over transnational securities transactions. While we exercised jurisdiction in both of the Ninth Circuit cases involving the extraterritorial application of the securities laws because the transactions produced "effects" within the United States, *Des Brisay v. Goldfield Corp.,* 549 F.2d 133 (9th Cir.1977); *Securities and Exchange Commission v. United Financial Group, Inc.,* 474 F.2d 354 (9th Cir.1973), we have never held that the absence of such effects precludes the exercise of jurisdiction or that conduct alone is not enough. Indeed, consistent with the established objectives of the federal securities laws, we have recognized that "the jurisdictional hook need not be large to fish for securities law violations." *United Financial Group, Inc.,* 474 F.2d at 357 (quoting *Lawrence v. SEC,* 398 F.2d 276, 278 (1st Cir.1968)). In our view, the test for subject matter jurisdiction formulated by the Eighth Circuit in *Continental Grain (Australia) Pty. Ltd. v. Pacific Oilseeds, Inc.,* 592 F.2d 409 (8th Cir. 1979), best satisfies those objectives.

In *Continental Grain,* plaintiff, an Australian corporation, purchased all of the stock of another Australian corporation from defendants. Defendants were an Australian corporation, a California corporation and a California resident. Plaintiff alleged that defendants defrauded it by failing to disclose certain facts about the principal assets of the acquired corporation. The transaction produced no effect in the United States. The conduct that occurred in this country consisted largely of the use of instrumentalities of interstate commerce to transmit communications that furthered the alleged fraud. After reviewing relevant case law from the Second, Third and Eighth Circuits, the court formulated a test for subject matter jurisdiction that considered

> whether defendant's conduct [that involved the use of instrumentalities of interstate commerce] in the United States was significant with respect to the alleged violation ... and whether it furthered the fraudulent scheme .... The conduct in the United States cannot be merely preparatory ... and must be material, that is, directly cause the losses.

*Continental Grain,* 592 F.2d at 420 (citations omitted). Applying this test to the facts before it, the Eighth Circuit held that the defendants' conduct supported subject matter jurisdiction. The Third Circuit has adopted a similar view. *See SEC v. Kasser,* 548 F.2d 109, 114 (3d Cir.) ("The federal securities laws, in our view, do grant jurisdiction in transnational securities cases where at least some activity designed to further the fraudulent scheme occurs within this country."), *cert. denied,* 431 U.S. 938, 97 S.Ct. 2649, 53 L.Ed.2d 255 (1977).

We believe that the test used by the Third and Eighth Circuits advances the policies underlying federal securities laws. First, to deny jurisdiction in cases like *Continental Grain* might encourage "those who wish to defraud foreign securities purchas-

---

**5.** The sole basis for subject matter jurisdiction in the district court was § 22 of the 1933 Act, 15 U.S.C. § 77v(a), and its counterpart, § 27 of the 1934 Act, 15 U.S.C. § 78aa. Each of those jurisdictional provisions expressly confers upon the federal district courts jurisdiction over "all suits in equity and actions at law brought to enforce any liability or duty created by" the 1933 Act or the 1934 Act, respectively. *See* 15 U.S.C. §§ 77v(a), 78aa.

The provisions of the 1933 Act and the 1934 Act under which liability is asserted in this case each proscribe fraudulent activity only if accomplished through the "use of any means or instruments of transportation or communica-

tion in interstate commerce," 1933 Act, §§ 12(2), 17(a), 15 U.S.C. §§ 77*l*, 77q(a), or "the use of any means or instrumentality of interstate commerce," 1934 Act, § 10(b), 15 U.S.C. § 78j(b). The term "interstate commerce" is similarly defined under both the 1933 Act and the 1934 Act to include, respectively, "trade or commerce in securities or any transportation or communication relating thereto ... between any foreign country and any State," 15 U.S.C. § 77b(7), and "trade, commerce, transportation, or communication ... between any foreign country and any State," 15 U.S.C. § 78c(a)(17).

ers or sellers to use the United States as a base of operations ... [and,] in effect, create a haven for such defrauders and manipulators." *Kasser,* 548 F.2d at 116; *see also Continental Grain,* 592 F.2d at 421–22. In addition, a "fundamental purpose, common to [the federal securities] statutes, was ... to achieve a high standard of business ethics in the securities industry." *SEC v. Capital Gains Research Bureau,* 375 U.S. 180, 186, 84 S.Ct. 275, 279, 11 L.Ed.2d 237 (1963) (footnote omitted). Thus, the view adopted by the Third and Eighth Circuits is "consistent with the intent of Congress, as expressed in the antifraud provisions of the federal securities laws, to elevate the standard of conduct in securities transactions" within this country. *Continental Grain,* 592 F.2d at 421; *IIT v. Cornfeld,* 619 F.2d at 919; *Kasser,* 548 F.2d at 116. Assertion of jurisdiction may encourage Americans— such as lawyers, accountants and underwriters—involved in transnational securities sales to behave responsibly and thus may prevent the development of relaxed standards that could "spill over into work on American securities transactions." Note, *American Adjudication of Transnational Securities Fraud,* 89 Harv.L.Rev. 553, 570–71 (1976).

We adopt the *Continental Grain* test and hold that defendants' conduct was sufficient to establish subject matter jurisdiction.[6] The misrepresentations that took place in this country were "significant with respect to the alleged violation[s]," *Continental Grain,* 592 F.2d at 420; *Travis v. Anthes Imperial Ltd.,* 473 F.2d 515, 524 (8th Cir.1973), and "furthered the fraudulent scheme," *Continental Grain,* 592 F.2d at 420; *Kasser,* 548 F.2d at 114. Although Grunenthal had previously been told by

Lowe that Hotz controlled Productos, the Los Angeles meeting furthered the fraudulent scheme because Hotz for the first time, through his silence, confirmed the claim that he owned Productos. Hotz' conduct in this country was not "merely preparatory"; rather, the conduct was "material" because immediately thereafter defendants signed and plaintiff was induced to execute the agreement. *Continental Grain,* 592 F.2d at 420; *IIT v. Vencap,* 519 F.2d at 1018; *Bersch,* 519 F.2d at 993. Moreover, the execution of the agreement in Los Angeles itself constituted an act that strongly supports our assertion of jurisdiction. The signing of this agreement by Hotz can be regarded as a definitive statement by him that he was in a position to complete the transaction. In short, we do not regard defendants' allegedly fraudulent conduct in Los Angeles as a "mere repetition" of previous misstatements.[7] On the contrary, the misrepresentation arising from Hotz' presence for the first time, and the actual signing of the agreement, were significant, material and in furtherance of the fraudulent scheme.[8]

We disagree with the district court's view that the result in this case should be different because the allegedly fraudulent conduct occurred in this country by happenstance. We think it of little significance that the conduct in this country was "based on convenience." 511 F.Supp. at 588. Indeed, to hold otherwise could make it convenient for foreign citizens and corporations to use this country and its lawyers, accountants and underwriters to further fraudulent securities schemes. *See Continental Grain,* 592 F.2d at 421; *Kasser,* 548 F.2d at 116.

---

6. There is no dispute that defendants used instrumentalities of interstate commerce to effect the alleged fraud by, at a minimum, using such instrumentalities to attend the Los Angeles meeting.

7. The misrepresentation regarding Hotz may have been even more significant and material because it was made in the office of Grunenthal's American counsel. However, we are not certain whether counsel was actually present

or what role, if any, he played. The district court's findings are silent in this regard.

8. Because we have found jurisdiction based on plaintiff's first claim of misrepresentation, we need not discuss its second claim at this juncture. The second claim, considered by the district court only in a footnote, is that defendants falsely represented in Los Angeles that they had the present intention to perform the agreement.

Assertion of jurisdiction under the facts of this case is not inconsistent with the approach taken by the Second Circuit. In *Bersch,* for example, the Second Circuit held that foreign plaintiffs [9] in transnational securities cases could bring their claims in our courts if "acts (or culpable failures to act) within the United States directly caused [their] losses." 519 F.2d at 993. *See also Leasco,* 468 F.2d at 1335–37 (subject matter jurisdiction sustained over a transaction in securities of a foreign issuer consummated abroad where "substantial misrepresentations" had occurred in the United States); *IIT v. Vencap,* 519 F.2d at 1018 (jurisdiction exists where "fraudulent acts themselves" rather than "mere preparatory activities" were committed in United States). And, in its most recent pronouncement on this issue, the Second Circuit quotes language from the Eighth Circuit's *Continental Grain* decision with approval. *IIT v. Cornfeld,* 619 F.2d at 918.

Because defendants utilizing instrumentalities of interstate commerce made misrepresentations in the United States that were significant with respect to the securities laws violations and furthered the fraudulent scheme, and because those misrepresentations were material and not merely preparatory, jurisdiction exists over plaintiff's cause of action.

REVERSED.

---

**9.** We note that the Second Circuit's apparent application of different tests depending on the nationality of the plaintiff may raise constitutional questions. *See, e.g., Continental Grain,* 592 F.2d at 418 n. 14; Note, *The Extraterritorial Application of the Antifraud Provisions of the Securities Acts,* 11 Cornell Int'l L.J. 137, 146 n. 67; Note, *American Adjudication of Transnational Securities Fraud, supra,* 89 Harv. L.Rev. at 569; Comment, *Transnational Reach of Rule 10b–5,* 121 U.Pa.L.Rev. 1363, 1376–77 (1973).