**PAULSON INVESTMENT COMPANY, INC., Plaintiff,**

v.

**NORBAY SECURITIES, INC., a New York corporation; North Hills Investors, Inc., a New York corporation; Marvin Cooper; Harvey Rubenstein; Walwyn, Stodgell, Cochran, Murray, Limited, a Canadian corporation; Gerald F. McCall; and James McGorman, Defendants.**

**PAULSON INVESTMENT COMPANY, INC., Plaintiff,**

v.

**Marvin COOPER and Harvey Rubenstein, Defendants.**

Civ. Nos. 82–1543–FR, 82–1611–FR.

United States District Court, D. Oregon.

Oct. 16, 1984.

Randolph C. Foster, Joyce A. Harpole, Stoel, Rives, Boley, Fraser & Wyse, Portland, Or., for plaintiff.

Harvey Rubenstein, Bosio & Associates Ins. Agency, Inc., Agent for defendants Cooper and Rubenstein.

James R. Moore, Schwabe, Williamson, Wyatt, Moore & Roberts, Portland, Or., for defendants Walwyn, Stodgell, Cochran, Murray, Ltd.

Gary Berne, Portland, Or., Franklin D. Ormsten, New York City, for Norbay Securities.

Donald H. Marmaduke, Tom Fenner, Tonkon, Torpe, Galen, Marmaduke & Booth, Portland, Or., Guy P. Lander, Law Offices of Leonard R. Glass, New York City, for North Hills.

Gary M. Georgeff, Waggoner, Chapman, Farleigh, Wada & Bogrand, Portland, Or., for BMI Capital, Inc.

James McGorman, pro se.

## OPINION AND ORDER

FRYE, District Judge.

Before the court are defendant BMI Capital, Inc.'s (BMI) motion to dismiss for lack of jurisdiction, filed pursuant to Fed.R. Civ.P. 12, and alternative motions.

### Facts Before the Court by Way of Allegations in Plaintiff's Complaint or by Affidavit

Plaintiff Paulson Investment Company, Inc. (Paulson) claims damages for the sale of unregistered securities based on federal, state, and common laws. Paulson is an Oregon brokerage firm that buys and sells securities. BMI is a Canadian corporation with its principal place of business in Toronto, Ontario, Canada. BMI stock is not registered with the Securities and Exchange Commission (SEC) or the Oregon Corporation Commissioner.

In October and November, 1982, Paulson purchased BMI stock from defendants Norbay Securities, Inc. (Norbay) and North Hills Investors, Inc. (North Hills), both New York corporations and brokerage firms. Paulson purchased BMI stock pursuant to orders placed by defendants Marvin Cooper and Harvey Rubenstein.

The BMI stock made its way from Canada to Oregon through a series of transactions involving Rubenstein. In January, 1982, Rubenstein met George Sukornyk, Chairman of the Board of BMI, at a party in New York. Rubenstein told Sukornyk that he owned Black Hills, a Canadian corporation, along with Cooper and others and that Black Hills had a controlling interest in Western Consortium, an American corporation. BMI was interested in acquiring an interest in Western Consortium.

Thereafter, Sukornyk and others from BMI met with Rubenstein in New York. At the meeting Rubenstein proposed that BMI acquire an interest in Western Consor-

tium by exchanging BMI stock for Black Hills stock. Sukornyk and others from BMI met with Rubenstein again in February and March, 1982 in New York to negotiate the proposed exchange of stock. Sukornyk met with Rubenstein again in September, 1982 to discuss the transaction. The parties agreed that Rubenstein would go to Canada to meet with BMI's Board of Directors and execute a letter of intent which would confirm BMI's offer to buy Black Hills stock.

In mid-September, 1982, Rubenstein met with the Board of Directors in Canada and signed a letter of intent relating to the proposed purchase of Black Hills stock by BMI. This deal was never approved by BMI's shareholders and was never finalized. However, at the time the Black Hills deal was being discussed, Rubenstein offered to buy all of Sukornyk's shares of BMI. Sukornyk rejected the offer. Rubenstein also approached McGorman, president of BMI and a defendant in this action, about purchasing BMI stock.

McGorman met with Rubenstein on a regular basis during a six-week period in Canada after Rubenstein's execution of the letter of intent regarding the Black Hills deal. McGorman proposed a transaction to Rubenstein that would enable him to acquire BMI stock.

McGorman and two associates owned a controlling interest in a Canadian corporation, which for purposes of simplicity will be called "OL I." All of the stock of "OL I" was in turn owned by another Canadian corporation, "OL II." McGorman proposed to sell "OL I" to BMI in exchange for BMI stock. Apparently BMI was indebted to McGorman, and McGorman thought that if BMI was willing to purchase OL I stock in exchange for BMI stock, then BMI would be converting debt into equity.

BMI agreed to buy all of the OL I stock in exchange for 417,600 shares of BMI stock. Then in late September, 1982, McGorman, on behalf of OL II sold 417,600 shares of BMI stock to Rubenstein. Rubenstein was to pay $313,000 (Canadian) to McGorman for the stock.

Only part of the purchase price of the BMI stock was ever paid. Rubenstein asked McGorman to have OL II open an account at North Hills, and also requested McGorman to order certain Western Consortium stock for which Rubenstein agreed to pay as part of the purchase price of the BMI stock. Rubenstein thereafter paid $55,000 (U.S.) on OL II's account for the Western Consortium stock and also paid to OL II $120,000 (U.S.).

In October and November, 1982, Rubenstein sold BMI stock through Walwyn, Stodgell, Cochran & Murray, a Canadian brokerage firm. Rubenstein's account at Walwyn was handled by a Mr. Bond. McGorman had referred Rubenstein to Bond. Thereafter, Rubenstein directed Bond to sell the BMI stock to Norbay and North Hills. Plaintiff purchased the stock from Norbay and North Hills pursuant to orders placed by Cooper and Rubenstein. Plaintiff has not been paid for its purchase of BMI stock.

BMI asserts that this court does not have personal jurisdiction.

### Discussion and Ruling

Paulson claims that this court has personal jurisdiction over BMI under section 22 of the Securities Act of 1933, 15 U.S.C. § 77v, and section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, both of which allow service of process "wherever defendant may be found." These sections give federal district courts exclusive "subject matter" jurisdiction over securities law cases, set certain venue requirements, and provide for worldwide service of process.

While the worldwide service of process provision extends a plaintiff's ability to *effect* service of process, *Belke v. Merrill Lynch, Pierce, Fenner & Smith*, 518 F.Supp. 602, 605 (S.D.Fla.1981), *rev'd on other grounds*, 693 F.2d 1023 (11th Cir. 1982), it does not extend the court's jurisdiction beyond the limits imposed by the due process clause of the fifth amendment to the United States Constitution. *Leasco*

*Data Processing Equipment Corp. v. Maxwell,* 468 F.2d 1326 (2nd Cir.1972).

■ When a federal statute authorizes worldwide service of process, a court must decide whether the party which has been served has had minimum contacts with the United States as a whole. A federal district court can obtain personal jurisdiction over a defendant even if that defendant has never set foot inside the state where the federal court is located, provided that venue requirements are met. The relevant question is whether the defendant has committed acts anywhere in the United States. *Alco Standard Corporation v. Benalal,* 345 F.Supp. 14, 24–25 (E.D.Pa.1972).

BMI maintains that it does not have sufficient minimum contacts with the United States for this court to exercise jurisdiction. Paulson has the burden of coming forward with evidence of "jurisdictional facts" sufficient to support the exercise of personal jurisdiction by this court. *Taylor v. Portland Paramount Corp.,* 383 F.2d 634, 639 (9th Cir.1967). The court's exercise of personal jurisdiction must be measured by the constitutional standard set out in *International Shoe v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Personal jurisdiction is permissible only if defendant has sufficient minimum contacts with the United States.

Since *International Shoe,* two principles have emerged:

■ 1. Where an entity has "continuous and systematic" contacts with a forum, the entity is "present" there and a court may exercise personal jurisdiction over it even if the claim is unrelated to the forum activities.

■ 2. Where an entity does not have "continuous and systematic" contacts, there must be some act *related* to the cause of action, by which the entity has personally availed itself of the privilege of conducting activities with the forum.

*Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F.2d 406, 412 (9th Cir.1977).

■ The issue before the court is whether BMI has sufficient minimum contacts with the United States to satisfy either of these two tests.[1]

BMI's only contacts with Oregon are:

1. It is a defendant in *Omega Northwest, Inc. v. Norbay Securities, Inc., et al.,* No. 83–115 (D.Or. filed 1984). BMI has not consented to personal jurisdiction in this action.

2. Ed Dryden of Omega Northwest, Inc. placed a telephone call on October 15, 1982, requesting financial information. None of the stock which is the subject of this action was ever sold to Dryden or Omega Northwest, Inc.

3. The presence of BMI stock in Oregon.

BMI's only contacts with the United States are:

1. A private placement of BMI stock pursuant to section 144 of the Securities and Exchange Act occurred in 1980 in the United States. All of these securities are still in the hands of the original purchasers and are not involved in this action.

2. There are 500–600 BMI shareholders in the United States out of a total of 1700 shareholders.

3. There are four dormant subsidiaries of BMI incorporated in either Delaware or Georgia.

4. There were negotiations in New York between Sukornyk and other BMI associates and Rubenstein regarding the proposed acquisition by BMI of Black Hills stock.

*Continuous and Systematic Contacts*

■ None of BMI's contacts suggest that it has either continuous or systematic involvement in Oregon or other parts of the United States. The BMI stock privately

---

**1.** Paulson cites two cases in support of its argument that personal jurisdiction over BMI does not offend due process. *Grunenthal GMBH v. Hotz,* 712 F.2d 421 (9th Cir.1983); *Securities &* *Exch. Com'n v. United Financial Group, Inc.,* 474 F.2d 354 (9th Cir.1973). Both of these cases deal exclusively with the issue of subject matter jurisdiction in transnational securities cases.

placed pursuant to section 144 of the Securities and Exchange Act is still in the hands of the original investors. This has, in fact, been a one-time transfer of stock and has not generated any continuing involvement by BMI. The fact that BMI has subsidiary corporations in the United States is alone insufficient.[2] The parent corporation, in this case BMI, is not necessarily considered to be "present" here merely because it has subsidiaries which do business here. *Williams v. Canon, Inc.*, 432 F.Supp. 376 (E.D.Ca.1977). Finally, plaintiff does not argue that the negotiations between Sukornyk and Rubenstein regarding the Black Hills deal were either continuous or systematic.

### Acts Related to the Cause of Action

Where an entity does not have continuous and systematic contacts, a plaintiff may show it has availed itself of the privilege of conducting activities in the forum in order to establish personal jurisdiction. Paulson has presented the following facts in an effort to establish that BMI purposely availed itself of the privilege of conducting activities within the United States:

1. BMI stock is present in Oregon.

2. BMI issued stock to Rubenstein through a "straw man" company which BMI knew Rubenstein would market in the United States.

Paulson claims that the presence of BMI unregistered stock in Oregon satisfies the requirement that BMI purposely availed it-self of the privilege of conducting activities within the forum and cites *Black & Company v. Nova-Tech, Inc.*, 333 F.Supp. 468 (D.Or.1971) in support of its argument.

The *Black* case involved an action by Oregon residents who bought unregistered securities from a California corporation. The main issue was whether the court had personal jurisdiction over the California lawyers alleged to have participated in the sale of the unregistered stock. The court in *Black* followed the traditional view of quasi in rem jurisdiction which recognized that the physical presence of defendant's property in the forum is a sufficient basis for personal jurisdiction. Although the quasi in rem doctrine has not been formally abrogated, the mere presence of stock in Oregon is not sufficient given the Supreme Court's decision in *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).

Paulson asserts that BMI issued stock to Rubenstein in Canada knowing that Rubenstein would market the stock in the United States.[3] Foreign acts having an effect in a forum may satisfy the minimum contact standard. *Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175, 1177 (9th Cir.1980).

Here, BMI transferred 417,600 shares of BMI stock to OL II in exchange for all the shares in OL I. McGorman, on behalf of OL II, then sold the 417,600 shares of BMI stock to Rubenstein. McGorman stated that this transaction was intended to bene-

---

**2.** In some cases, the activities of a subsidiary corporation can be attributed to the parent corporation for jurisdictional purposes. In *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406 (9th Cir.1977), the court listed several factors to be considered in determining whether the corporate entity should be disregarded. Among the factors considered were whether the officers and directors are the same, whether separate books and financial statements are kept, and whether the parent corporation holds the subsidiary out as an agent. Paulson does not present any facts about BMI's subsidiaries for the court to consider whether or not the activities of these subsidiaries in the United States could have been attributed to BMI.

**3.** BMI in its reply memorandum refers to the stock transaction between BMI and OL II and

Rubenstein as Paulson's "conspiracy theory." Under a conspiracy theory, personal jurisdiction is established if an absent defendant "conspires" with someone in the forum. Paulson does not cite any authority in support of this theory, nor does it appear to rely on this theory as a basis for establishing personal jurisdiction. Paulson does rely on cases which recognize the principle that foreign acts which cause an effect in the forum can be a sufficient basis for personal jurisdiction. Because this district has previously rejected the conspiracy theory and because Paulson does not appear to rely on this theory, this court will not address this issue here. *Cascade Steel Rolling Mills, Inc. v. C. Itoh & Co., Inc.*, 499 F.Supp. 829 (D.Or.1980).

fit BMI by changing its debt into equity. Paulson does not allege that BMI was to receive any money or payment from Rubenstein as a result of this transaction. More importantly, Paulson does not submit any facts to show that BMI had *any control* over the transfer of the stock once it was sold to OL II.

For the foreign-acts-with-forum-effects principle to apply in this case, the person sought to be charged *must know,* or have *good reason to know,* that his conduct will have effects in the state seeking to assert jurisdiction over him. *Leasco Data Processing Equipment Corp. v. Maxwell,* 468 F.2d 1326 (1972). Paulson asserts that BMI "knew" Rubenstein would market the stock in the United States. In fact, McGorman's deposition suggests that McGorman may have been aware that Rubenstein would market the stock in the United States. The issue then is whether McGorman's knowledge, as president of BMI is imputed to the corporation. Paulson does not address this issue in its memorandum, but assuming that such knowledge is imputed to BMI, Paulson has failed to present any facts which would suggest that BMI had any control over Rubenstein's disposition of BMI stock. The only thing BMI appears to have knowingly done is sell its stock in exchange for OL I with the intent of converting its debt into equity.

This court concludes that facts sufficient to justify invoking the foreign-acts-with-forum-effects principle have not been shown here. Moreover, in *Kramer,* the United States Court of Appeals for the Ninth Circuit recognized that the foreign-acts-with-forum-effects principle must be applied with caution, particularly in an international context. *Id.*

BMI had some "contacts" in the United States. Personal jurisdiction can also be obtained where acts occur within the forum. The negotiations between Sukornyk and Rubenstein regarding BMI's proposed purchase of Black Hills were held in New York. These negotiations did not involve the issuance of BMI stock, the subject matter of this action. Although these negotia-

tions did ultimately lead to Rubenstein's introduction to McGorman in Canada, the connection between the Black Hills deal and the eventual sale of BMI stock by McGorman to Rubenstein is too tenuous to satisfy the minimum contacts standard.

*Conclusion*

Because this court finds personal jurisdiction to be lacking, this court need not reach defendant's other contentions.

IT IS ORDERED that defendant BMI Capital, Inc.'s motion to dismiss is GRANTED. The complaint is dismissed as to this defendant.